U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 19, 2021

**BY ECF**

Hon. Laurel Beeler
United States Magistrate Judge
Northern District of California
United States Courthouse
450 Golden Gate Avenue
San Francisco, CA 94102

      Re:    *United States v. Robert Lemke*, 21 Mj. 70156 (LB)

Dear Judge Beeler:

      Based on the Court's February 1, 2021 order that it would reconsider bail at the upcoming February 22, 2021 conference, *see* Transcript, ECF No. 12 ("Tr."), at 19, the Government writes to provide additional facts in support of the continued detention of Robert Lemke, the defendant. Starting on the day the U.S. Capitol was attacked and continuing for several weeks, Lemke sent threats to public figures and their family members, including a journalist, multiple U.S. Congressmen, multiple U.S. Senators, and the mayor of a major metropolitan city. These threats, sent by voice and text message, warned of impending harm to Lemke's victims and their families at the hands of members of law enforcement and the military. Many of the messages contained the names of particular family members and included references to his victims' addresses. All were sent to terrify and intimidate. For the reasons described below, the defendant remains a danger to the community and a risk of flight.

## Procedural and Factual Background

      On January 14, 2021, Magistrate Judge Ona T. Wang, of the Southern District of New York, authorized the filing of a criminal complaint against Robert Lemke, charging him with making an interstate threatening communication, in violation of Title 18, United States Code, Section 875(c) (the "Complaint"). As described in the Complaint, on or about January 6, 2021— the same day that individuals stormed the Capitol Building—Lemke sent threatening text messages to the brother and sister-in-law of a New York City-based Congressman, citing the Congressman's statements about the results of the 2020 Presidential Election. Complaint ¶ 3(a)-(d). Those messages claimed that Lemke was part of a larger, armed group, that he was watching the Congressman's family on camera in real time, that he was prepared to harm the Congressman's children, and that his confederates were near the home of the Congressman's brother and sister-in-law. *Id*. ¶ 3(b)-(c). Also on or about January 6, 2021, Lemke sent threatening text messages to a relative of a journalist, stating: "[The Journalist's] words are putting you and your family at risk.

We are nearby armed and ready. Thousands of us are active/retired law enforcement, military, etc. That's how we d[id] it." *Id*. ¶ 3(d).

Following the filing of the Complaint, law enforcement received the returns of a search warrant for the phone number that Lemke used to make the above-described threats. That data revealed that Lemke had also threatened: (i) a U.S. Congressman from California, (ii) the spouse of a different U.S. Congressman from California, (iii) a U.S. Senator, (iv) the spouse of a different U.S. Senator, (v) the mayor of a major U.S. city, and (vi) the leader of an anti-discrimination non-profit. Each of these messages—similar in form—stated that Joseph R. Biden, Jr. was not the actual winner of the 2020 Presidential Election, claimed that the defendant was working with military and/or law enforcement, and warned that the victim or the victim's relative was putting their family at risk through their public comments. Some of the messages also leveraged the fear sparked by the January 6, 2021 riot at the Capitol Building, claiming that the terror and damage caused by the riot was part of a broader plan with more violence to come. In each message, Lemke included the names of individuals he believed to be related to his victims and an address that he believed to be associated with the victim or the victim's family. For example, in or about the evening of January 6, 2021, Lemke wrote to a California-based U.S. Congressman:

> No, Joe Biden will not be inaugurated. You are making a fool of yourself. What you saw tonight is just the beginning. Tip of the iceberg. The spark and ignition. Thousands of us are retired AND active law enforcement and military. We have underground communication networks and have been planning this for months. Your words are putting you and your family at risk... [names of family members]... we are watching. [address]. (ellipses in original)

On or about January 26, 2021, Lemke was arrested and law enforcement searched his home pursuant to a search warrant authorized by Magistrate Judge Alex G. Tse of the Northern District of California. In the search, law enforcement found, among other things, a cellphone belonging to Lemke. In the initial review of that phone, law enforcement found additional threats to politicians using yet another phone number, including threats made using voice notes. For example, on or about the evening of January 10, 2021—several days after the attack on the Capitol—Lemke sent a voice note to a number associated with another California-based U.S. Congressman:

> Hello again, [Congressman]. I wanted to make sure you made the right decision and hired some private protection, private security for you, [your spouse] and the kids. I think that would be a really good idea for you to do since at least 60-65% of law enforcement is, at least privately, if not secretly, members of Oath Keepers and other militias across the country. Be a good idea for you to do.

A week later, on or about January 17, 2021, Lemke recorded the following, apparently targeting the same Congressman:

> And [Congressman], one last thing. I want you to think about it for a second. Even though you have 210 people signing on to your

impeachment. How about one and a quarter million at the very least storming the inauguration, storming the Capitol building again. And we'll do it a third, fourth, fifth time if we have to. What will you do then? You are adding fuel to the fire.[1]

On February 1, 2021, the Court held an initial appearance at which the Court ordered Lemke detained, "primarily based on danger," and adjourned proceedings until February 22, 2021. *See* Tr. 17, 19-20. On February 16, 2021, a grand jury in the Southern District of New York indicted Lemke for making interstate threats, in violation of Title 18, United Sates Code, Section 875(c). *See United States v. Lemke*, 21 Cr. 100 (AKH), ECF No. 4 (S.D.N.Y.). For the reasons that follow, Lemke should remain detained and ordered removed to the Southern District of New York to face the pending charge.

### **Legal Standard**

In considering whether any condition or combination of conditions would reasonably assure the defendant's presence in court and the safety of the community, the courts consider four factors:

> (1) the nature and circumstances of the offense charged . . . ;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

---

[1] Based on a preliminary analysis of the phone, it is unclear whether or not Lemke sent the voice message to the number he believed to belong to the California-based Congressman.

## **Argument**

The defendant should be detained because he is a danger to the community and presents a risk of flight.

The defendant repeatedly placed his victims in fear for their lives, which in and of itself constitutes a grave danger to the community. As described above, the defendant made numerous threats of violence aimed at, among others, politicians and journalists. These threats were personal—naming family members—and specific—identifying victim addresses. They targeted not only public figures, but their family members far removed from public life. The threats further invoked claims of the defendant's collusion with those who are supposed to protect our citizenry, the military and police, for the purpose of creating an additional feeling of insecurity, helplessness, and vulnerability. Lemke's intent in sending these threats is clear: to frighten and traumatize his victims and their families. The terror that can be inflicted by making threats of violence against another person's child, especially when identified by name, is unspeakable.

Importantly, the threats clearly were also intended to intimidate. Lemke sought to silence politicians and journalists with whom he disagreed. He attempted to pressure them, through his threats of violence against them and their loved ones. This conduct poses a danger to those he would and did attempt to place in fear for their lives.

Moreover, this was not an isolated incident. As reflected below, Lemke did not level his threats only on the day of the Capitol attack. He continued threatening other Congressmen in the weeks following. In addition, as the Court recognized at the February 1 conference, the defendant's actions appear to reflect "escalating conduct, which is serious and scary." Tr. 15. According to the pre-bail report, Lemke was charged in 2015 with making threats with intent to terrorize. *See* Pre-Bail Report 8-9. Police reports from that incident reflect that, on or about December 31, 2015, the defendant was stopped for driving a U-Haul erratically. During his interaction with law enforcement, Lemke falsely claimed to be a deputy with the Alameda County Sherriff's Department and admitted that he had a shotgun in the vehicle. Upon his arrest for driving under the influence, Lemke threatened the arresting officer, telling him, "I'll remember you, I will find you" and "I will hurt a [member of your family]." When asked by the officer if Lemke was making a threat, Lemke responded that he was not, but stated that he "heard someone will hurt a [member of the arresting officer's family]." Lemke, however, did not stop there. After his release, Lemke conducted research on the officer and apparently identified contact information for the officer's family. Lemke then left a message on the home phone of the officer's parents, falsely claiming he was an "investigator." According to phone records, he also called a number associated with the officer's sister and called the officer's precinct using a fake name attempting to reach the officer's supervisor. Quite simply, the defendant is a menace to the community.

This prior conduct, when paired with Lemke's actions on January 6, 2021, illustrates why confinement to the defendant's home would be insufficient to ensure the safety of the community. The defendant committed his crimes from the comfort of his home on a cellphone. He has shown the ability to strike fear in his victims without ever leaving his house and could do so again with few resources. Any attempts to control his behavior through conditions restricting his cellphone or internet use are unlikely to succeed. The defendant's 2015 arrest also shows that the defendant has

possessed a firearm in the recent past, indicating an ability to acquire weapons. The defendant has a demonstrated disrespect for law enforcement and, in light of his 2013 conviction for failure to appear in court, *see* Pre-Bail Report 7, a history of disobeying court orders. His prior interactions with the criminal justice system stemming from his threats to a law enforcement officer did not deter him from engaging in similar, escalating conduct in January. There is no reason to believe that the setting of bail conditions will do anything to deter him now.

At the defendant's initial appearance, counsel attempted to explain the defendant's conduct as stemming from his "serious alcohol problem," but the Court rightly noted that these crimes reflected "more than just alcoholism." Tr. 14-16. These were threats issued over multiple days to multiple individuals that required careful research into public figures and their families. The Court also inquired about whether the threats were "real," *id.* at 16, yet whether the defendant planned to carry out his threats, while surely an important consideration, is not in any way dispositive of the dangerousness analysis. These threats were certainly real to those that received them; they were intended to strike fear into public figures for speaking out on an issue of national importance. Such conduct is a danger to those who might receive the defendant's threats and to the community.

Finally, the defendant is a risk of flight. In addition to his conviction for failure to appear, *see* Pre-Bail Report 7, Lemke has also used multiple fake names and claimed at various times to be a private investigator, law enforcement officer, and retired member of the military. Lemke has even used aliases when interacting with law enforcement, evidencing a readiness to deceive and a willingness to use an assumed identity to avoid law enforcement scrutiny. These deceptions are disconcerting because the incentive to flee the charges in this case are so great. As described above, the evidence against Lemke is strong—the Government has identified threatening voice recordings in a phone located in the defendant's home with a voice matching that in the defendant's post-arrest statement. Lemke has now been indicted for a federal felony carrying a potential sentence of five years in prison. In short, the defendant's penchant for lies, history of non-appearance, and incentive to flee make him a flight risk.

      The Government respectfully submits that for these reasons, no condition or combination of conditions will reasonably assure the safety of the community or the defendant's appearance in court. The Court should uphold its initial order of detention in this case, and order the defendant's prompt transfer to face charges in the Southern District of New York.

                          Respectfully submitted,

                          AUDREY STRAUSS
                        United States Attorney

By:   _____
                        Kyle A. Wirshba / Kimberly Ravener /
                        Jacob Gutwillig
                        Assistant United States Attorneys
                        Southern District of New York
                        (212) 637-2493

cc: Daniel Bank, Esq.